# THE PEOPLE OF THE STATE OF NEW YORK ex rel. JULIUS E. GLUCH, Respondent, v DEBORAH GLUCH, Appellant.

Third Department, July 16, 1981

### APPEARANCES OF COUNSEL

*Lewis, Bell & Niles (John F. Niles* of counsel), for appellant.

*O'Connell & Wolfe (Lois McS. Webb* of counsel), for respondent.

### OPINION OF THE COURT

HERLIHY, J.

Petitioner and respondent are both enlisted personnel in the United States Air Force.

In November of 1977 an English court awarded respondent custody of her children. The present record indicates that at about the same time petitioner instituted child abuse proceedings with the military establishment and that after investigation the allegations were dismissed. Respondent and her children moved to Pease Air Force Base in New Hampshire in April of 1978 and in May of 1978 petitioner was transferred to Plattsburgh Air Force Base at Plattsburgh, New York.

The parties had established a schedule of visitations. However, petitioner abducted the children in July of 1978 by refusing to return them to respondent following a visitation. In late October of 1978 petitioner proceeded with a habeas corpus application in Supreme Court, Clinton County, and on February 2, 1979 Administrative Judge Harvey transferred the proceeding to Family Court, Clinton County. Prior to transfer of jurisdiction there were reports submitted by the Clinton County Probation Department and by the Department of Probation of the State of New Hampshire. In addition, a report based on an examination of the children by a clinical psychologist was also submitted.

Family Court was supplied with a copy of the order of the English court granting custody of the children to respondent, but the court in its decision recites that the parties stipulated that the transcript of the English court proceedings need not be submitted.

Custody of the two daughters of the parties was continued in petitioner by the Supreme Court issuance of a writ of habeas corpus and by the Family Court pending its final determination. The Family Court hearing was held on February 9, 1979 and a final determination granting custody to petitioner was rendered March 21, 1979. The appeal in this case was argued in this court on April 28, 1981. In this regard, it should be noted that respondent was represented in the lower court by a legal services corporation and her lack of substantial financial assets is well documented in the record.

Upon the present record, the exercise of discretion by the trial court to accept jurisdiction of the proceeding has only minimal support. Section 75-d of the Domestic Relations Law expressly requires that the courts consider certain specific conditions before accepting jurisdiction. Paragraph (b) of subdivision 1 provides that a court of this State has jurisdiction if: "it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court sub-

stantial evidence concerning the child's present or future care, protection, training, and personal relationships".

The petition stated no basis for jurisdiction in New York State. Petitioner executed an affidavit on November 6, 1978 "to amplify the petition" reciting that during the week of December 23, 1977 to January 3, 1978 he had custody of the children by visitation and that he observed "a series of black and blue marks" on the oldest child's arms and that a named person as well as the child herself had told him that respondent's "boyfriend" had caused the marks. Further, the affidavit recites that in January of 1978 a named person told him that both children had been kicked by a male then residing with respondent; that the youngest child reported to him that in February of 1978 respondent pushed her, resulting in a black eye; that on many occasions the children did not want to return to respondent from weekend visitations because of physical abuse by her and her "boyfriend" *residing* with her; that on a 1978 Memorial Day visitation one daughter reported to him that a boyfriend residing with respondent had responded to an argument between the daughters with a threat to push them out of the car; and, finally, that on two other visitations the children were on medication for infections.

The affidavit of petitioner concluded with allegations to the effect that perhaps respondent was neglecting the children's education; that from June of 1975 until April of 1978 respondent was seeing a psychiatrist; and that the older girl said respondent on occasions locked the children out of the house.

Respondent filed a reply affidavit, *also* dated November 6, 1978. She alleged that as a result of petitioner's *prior* complaint of black and blue marks an investigation was held and that the allegations were dismissed; that no male lived with her or kicked the girls; that the youngest girl's black eye resulted from running up the stairs to bed; that no boyfriend lived with her and the children had never been abused; that the threat to the girls while riding in the car was made, but only to quiet them; that all illnesses of the girls were treated by an Air Force pediatri-

cian; that the oldest girl's reading difficulties were from a change in school systems; that the English court gave her custody "after a full hearing" at which both parties testified; that the only time the children were ever locked out of a house was by petitioner; and that petitioner does not treat the girls properly.

The report by a clinical psychologist based on examinations of the children on November 14 and November 30, 1978 found the children to be of average intelligence and recites that the older daughter is upset about the parents' separation and "views her mother as a mean person * * * yelling and spanking her children", and that she mentioned that her mother locked her out of the house while entertaining a boyfriend. The older daughter wanted to stay with her father. The report recites that the younger daughter stated that her mother often sent her upstairs and once pushed her, causing a black and blue mark.

The Clinton County Department of Probation report was dated January 17, 1979 and it recited all of petitioner's allegations. It concludes that based on all reports the children are properly taken care of by petitioner. The report recites that the probation officer had in her possession the psychological evaluation referred to above, that she interviewed the girls *alone*, and that the older girl stated that the only time they were ever locked out of a house was by petitioner; that at most her mother's boyfriend might have pinched her arm on one occasion, making a black and blue mark; and that the kicking by a boyfriend or threatening to throw them out of a car window was "done in a joking way". The older girl did report that her sister bruised her eye while their mother was trying to hurry her up the stairs. The older daughter expressed a preference for her father and the younger girl for her mother.

Perhaps most importantly for those proceedings, the probation report stated: "Balanced against all of this is the view that growing, maturing female children need the advice and common view of a mother figure, and that these children will require this even more as they grow older. *We are concerned that we cannot obtain* more solid evidence relating to the allegations of child abuse which Mr. Gluch has made; he is unable to provide a full name or address for

one possible witness, and we have received no response from the other, Sgt. Howard, to whom we have written at his supposed address in England." (Emphasis added.)

Finally, the report by the New Hampshire Department of Probation dated January 4, 1979 shows that respondent has adequate housing for the infants and that she is highly regarded by her superiors. The report recites that although the mother has a boyfriend, her housing is on base and the military strictly forbids living with someone of the opposite sex while unmarried. The report concludes with the statement that there is no apparent reason why the children should not be returned to respondent, perhaps with an order requiring the local agency to make periodic checks.

The documentary evidence is insufficient to establish any basis for the exercise of jurisdiction to modify the existing order of custody. There were some contradictory allegations of past abuse but, most importantly, there was no showing of any sound reason to fear for the immediate well-being of the children if continued in the custody of respondent. The indulgence of continued custody in a parent who has abducted his children, without clear and convincing preliminary evidence of danger, will only encourage such parents to induge self-righteous beliefs as to their superior fitness for child rearing. Both the common law and the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A; *Martin v Martin*, 45 NY2d 739) seek to discourage parents from resorting to self-help by abduction. Beyond the most preliminary examination of the papers submitted to the courts, the proceeding should have been dismissed. Unfortunately, it was not so dismissed and this matter has apparently resulted in the continued custody by petitioner for nearly three years.

In passing, it should be noted that the evidence at the hearing did not suffice to establish any change in circumstances warranting a change in custody.

The order should be reversed, on the law and the facts, and petition dismissed, with costs; petitioner directed to comply with the prior order of the English court granting custody to respondent.

SWEENEY, J. P. (dissenting). We are unable to agree

with the majority that the order of the Family Court should be reversed and, therefore, dissent and vote to affirm. The Family Court, in our view, had jurisdiction of the matter. Both the children and petitioner were living in Clinton County and there was ample proof that it was in the best interest of the children to assume jurisdiction (Domestic Relations Law, § 75-b). We are also of the view that the court properly exercised jurisdiction. The English court that made the initial determination clearly no longer has jurisdiction of any of the parties. Assuming the New Hampshire court satisfied the jurisdictional requirements, such does not prevent the courts of this State from maintaining jurisdiction (Domestic Relations Law, § 75-d, subd 1, par [b]). We also disagree with the majority's finding that petitioner abducted the children. The record demonstrates to us that petitioner was motivated to take the children from their maternal grandmother by a genuine concern for their health as found by the Family Court.

Passing to the merits, the record demonstrates that the children have now been with petitioner for almost three years and have made a successful and satisfactory adjustment to their living situation. The life-style of respondent is not conducive to a healthy and normal rearing of two young girls. Finally, the trial court saw and heard the various witnesses and its findings should be accorded the greatest respect *(Matter of Zavasnik v Zavasnik*, 59 AD2d 954). The order, therefore, should be affirmed.

MAIN and MIKOLL, JJ., concur with HERLIHY, J.; SWEENEY, J. P. and KANE, J., dissent and vote to affirm in an opinion by SWEENEY, J. P.

Order reversed, on the law and the facts, and petition dismissed, with costs; petitioner directed to comply with the prior order of the English court granting custody to respondent.