OPINION OF THE COURT
Eli Wager, J.
The issue in this custody proceeding brought pursuant to the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) is whether this court should exercise its jurisdiction to modify a custody decree entered by the Superior Court in Santa Barbara County, California.
The petitioner mother asserts that she and the respondent father were married in the State of California and that the child was born there on July 25,1980. She alleges that as the result of marital problems she determined in July of 1981 to flee to her parents’ home in New York. Without advising respondent, she purchased tickets for a flight to New York on July 23, 1981, but on July 21, two days before the flight, respondent discovered the tickets and immediately sought legal assistance. A summons and petition for divorce and custody together with a temporary *542 restraining order preventing petitioner from removing the child from the State were served the following day, but on July 23 petitioner flew to New York as planned, taking the child with her. She arranged for an attorney to represent her at the hearing in California scheduled for July 30, 1981. The transcript of that hearing, indicates that the California court agreed to render its decision on whether plaintiff had been properly served the following day and that, if service was found to be valid, the hearing on custody would resume on August 4. On July 31, 1981 the California court issued an order finding that petitioner had been properly served and on August 10 an “order after hearing for temporary child custody” (which states that hearings were held on July 8 and again on Aug. 4) was filed granting custody to the respondent “until further order of Court.” An interlocutory judgment of divorce granting custody to respondent was entered on default on November 3, 1981 and a final judgment was entered on January 26, 1982. It appears that in July of 1982 respondent caused an arrest warrant to issue, and that petitioner immediately thereafter brought on this proceeding by order to show cause containing a temporary restraining order which purports to restrain the District Attorney of Nassau County from executing the warrant. The District Attorney has submitted an affirmation in which he urges that, even though the court lacks jurisdiction to restrain execution of an arrest warrant issued by another State, the “custody issue be resolved as quickly as possible in the civil, not the criminal, realm.” The matter appeared on the Special Term, Part V Calendar of this court where no findings were made. Instead, the motion was referred for a hearing before this court on November 8,1982. An inquest was requested by the petitioner; however, this court has deferred the hearing pending a determination of the threshold jurisdictional issue.
Respondent, who has not come to New York and did not appear on November 8, has filed a pro se answer to the petition in which he claims, inter alia, that custody was granted him in California “after a hearing” (contrary to petitioner’s assertion) and that, contrary to the disclaimer contained in the petition, petitioner previously sought *543 relief similar to that sought here. It appears that in the fall of 1981 shortly after her arrival from California petitioner brought on an action in this court for a declaration that the Superior Court in Santa Barbara County had no jurisdiction to grant custody to defendant and that the State of New York has jurisdiction to determine the issue pursuant to the Uniform Child Custody Jurisdiction Act. The complaint was dismissed (Hays v Hays, 111 Misc 2d 722) upon the ground that New York was not the child’s “home state” since he had not resided here for a period of six consecutive months prior to the commencement of the action (Domestic Relations Law", § 75-c, subd 5; § 75-d, subd 1, par [a]) and that the petitioner (p 726) “cannot secure jurisdiction of this court by employment of self-help measures to bring the infant issue before this court.” Respondent also asserts (in his affidavit) that he was forced to retain New York counsel to represent him in the declaratory judgment action (and to oppose petitioner’s motion to amend her complaint made during the pendency of the action) and that he cannot afford further legal fees. The answer denies all of the petitioner’s allegations relating to his ability to earn a living, lack of interest in his two-year-old son and requests that the California decree be enforced and this petition dismissed.
Preliminarily, it is noted that petitioner did not appeal the California court’s decision that she had been validly served in the California action and thus this is not the proper forum in which to challenge that order (see, e.g., Belosky v Belosky, 97 NM 365). Accordingly, it is established prima facie that petitioner knowingly violated and continues to violate a valid order of a sister State’s court and that the child is in this State because of her misconduct.
The policy in New York prior to its adoption of the uniform act, and prior to enactment of the Federal Parental Kidnaping Prevention Act (US Code, tit 28, § 1738A) in 1980, was that “if the best interests of all children are to be served, the abduction of children to avoid the effect of custody decrees must be deterred” and that priority should, in the absence of extraordinary circumstances, be accorded the first custody awarded in litigation or by voluntary *544 agreement (see Matter of Nehra v Uhlar, 43 NY2d 242, 249). The “strong policy” relating to parental abduction mandated that if modification jurisdiction in this State exists by virtue of parental disregard of a sister State’s custody decree, the courts of this State should defer to the courts of the sister State unless the “immediate physical and mental welfare” of the child or children requires that the courts in this State determine who should have custody (Martin v Martin, 45 NY2d 739).
Like the common law, the uniform act, which became effective in New York in 1978 (L 1977, ch 493), seeks, inter alia, to avoid jurisdictional competition and conflict with the courts of other States (Domestic Relations Law, § 75-b, subd 1, par [a]), to discourage parents from resorting to self-help (Domestic Relations Law, § 75-b, subd 1, par [e]; see People ex rel. Gluch v Gluch, 82 AD2d 55, affd 56 NY2d 619) and to avoid relitigation of custody decisions of other States in this State insofar as feasible (Domestic Relations Law, § 75-b, subd 1, par [f]). Thus, subdivision 2 of section 75-i of the act provides as follows: “2. Unless required in the interest of the child, the court shall not exercise its jurisdiction to .modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody.” Pursuant to subdivision 2 of section 75-i this court could properly refuse to exercise jurisdiction to modify the California decree even if California lacked jurisdiction to do so itself (see Clark v Clark, 67 AD2d 388). As the court in Gluch (supra, p 59) observed, the “indulgence of continued custody in a parent who has abducted his children, without clear and convincing preliminary evidence of danger, will only encourage such parents to indulge self-righteous beliefs as to their superior fitness for child rearing.” Subdivision 2 of section 75-i is, of course, inapplicable where both parents have engaged in illegal self-help (see, e.g., Matter of Massey v Massey, 89 AD2d 566; Leslie L. F. v Constance F., 110 Misc 2d 86).
*545 Thus, the issue is whether this court is “required in the interest of the child” to exercise the jurisdiction it obviously now has pursuant to section 75-d (subd 1, par [a], cl [i]) and subdivision 5 of section 75-c of the Domestic Relations Law since the child has resided here for more than six months. Petitioner does not allege that the child’s health and welfare would be endangered if jurisdiction were refused other than to assert that she and the child have never been separated. She asserts, however, that it would be in the child’s best interest if the modification issue were determined in New York since the infant now has a “significant connection” with this State and there is “substantial evidence” here concerning his present or future care, protection, training and personal relationships (Domestic Relations Law, § 75-d, subd 1, par [b]). However, the only connection or evidence she points to in her papers is the presence of her parents and that of a pediatric dental surgeon who has been treating the infant’s dental problems. Clearly, since the infant is only two years old, no other evidence (i.e., school, records, extracurricular activities, friends, church affiliation, etc.) exists. In the end, petitioner is reduced to alleging the incompetence of the respondent and his family as compared to that of herself and her family. Her assertion that respondent lacks interest in the child would seem to be belied by the actions he has taken, not only in pursuing a custody award in California but in opposing the litigation here. And her allegation that the existing custody decree was rendered in California without considering the child’s interest is not supported by the court’s order which indicates two custody hearings, one on August 4, 1981 after entry of its decision on the notice issue.
Nevertheless, the California court had jurisdiction to make a custody award and it appears that California has preferred jurisdiction to modify it pursuant to section 14 of the uniform act (Domestic Relations Law, § 75-o; see Commissioners’ Note, Uniform Child Custody Jurisdiction Act [9 Uniform Laws Ann, § 14, p 154]) although the jurisdiction is not considered exclusive (see, e.g., Clark v Superior Ct. of Mendocino County, 73 Cal App 3d 298; Allison v Superior Ct. of Los Angeles County, 99 Cal App 3d 993; *546 Schlumpf v Superior Ct. of Trinity County, 79 Cal App 3d 892; Matter of Leonard, 122 Cal App 3d 443). The preempting Federal statute provides (at US Code, tit 28, § 1738A, subd [d]) that “(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant” (emphasis supplied). Paragraph (1) of subdivision (c) provides that a child custody determination is consistent with the section only if the court has jurisdiction under the laws of the State. Subdivision (f) of section 1738A authorizes modification of a custody decree of the court of another State only if the nondecree State has jurisdiction and the decree State either does not have jurisdiction or has refused to exercise its jurisdiction. This section has been construed as conferring exclusive jurisdiction to modify upon the decree State as long as it has jurisdiction under its own, law and has not refused to exercise such jurisdiction (see William R.B. v Cynthia B., 108 Misc 2d 920; cf. Matter of Mebert v Mebert, 111 Misc 2d 500).
On balance, it appears that this court should defer to the Superior Court of Santa Barbara County. Clearly, the issue must be litigated at some time on the basis of all the facts. Given the age of the infant, the facts relating to “significant connection” and “substantial evidence” relate primarily to the parties and their comparative parenting abilities and on these issues it appears that more evidence might be available in California since the petitioner by her own admission is better off financially (and thus better able to travel) than respondent (cf. Matter of Settle, 276 Ore 759). It would also appear that whether California can provide dental treatment comparable to New York is a question that can be investigated by the California court. It also appears that since these are the only issues relating to the child’s interest raised in the papers, no preliminary hearing on the jurisdictional question is necessary.
It is noted that should the Superior Court in California refuse jurisdiction, a subsequent application to this court might meet with more success since another basis for *547 jurisdiction (see US Code, tit 28, § 1738A, subd [f], par [2]) would be thrown into the balance (cf. Steinman v Steinman, 80 AD2d 892; Singer v Singer, 79 AD2d 680).
See short form order of even date dismissing the petition.