*740 OPINION OF THE COURT

Per Curiam.

Petitioner father seeks permanent custody of two boys, now aged seven and eight, alleging that the mother, his second wife, who was awarded custody under the terms of a separation agreement incorporated into a Florida judgment of divorce, is an unfit parent (Domestic Relations Law, § 70). Special Term denied the father’s application, declining to exercise jurisdiction. The Appellate Division [52 AD2d 144] reversed, and ordered a hearing, at which the father was awarded custody. The mother appeals directly from the judgment at Supreme Court pursuant to CPLR 5601 (subd [d]) raising only the correctness of the reversal by the Appellate Division and the direction of a hearing (see Matter of Farber v U. S. Trucking Corp., 26 NY2d 44, 55, stating that a CPLR 5601, subd [d], appeal brings up for review only the prior order of the Appellate Division, and that the scope of review is "only” the nonfinal order).
The issue involves only application of the principles most recently expressed by this court in Matter of Nehra v Uhlar (43 NY2d 242). Since the children have been in New York largely because of the father’s repeated disregard of the terms of the Florida judgment, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the petition dismissed.
The father’s allegations of misconduct by the mother need not be detailed. It suffices to note that her conduct, if the charges are true, would likely make her an unfit parent, although despite these grave charges the father returned the children at least once after having retained them unlawfully. Not justified, however, was the father’s resort to self-help. He has, on three separate occasions, unlawfully taken or retained custody of the children in violation of the Florida divorce judgment. Moreover, even if the father is assumed to have been motivated by the interests of his children, the record reveals that the father several times left the children with his first wife in New Jersey or with his daughter in a college dormitory also in New Jersey.*
*741 The best interest of the children is, of course, the prime concern (Domestic Relations Law, § 70; Finlay v Finlay, 240 NY 429, 433-434 [Cardozo, J.]). That the children’s best interest must come first, however, does not mean that the courts of this State should disregard the prior Florida judgment and determine, as if writing on a clean slate, who would make a better parent. Except for interludes caused by the father’s wrongful retention of the custody of the children, the Martin boys lived in Florida from the time of their parents’ separation in 1970, when the younger boy was newborn, to the time of the father’s most recent abduction in December, 1976. If their mother be an unfit parent, that is a matter for the Florida courts to decide. Florida is where the boys have been raised, and where the witnesses are most likely to be found. It is not appropriate for the courts of this State, on the present record, to presume to say that the children would be better off with their father.
This deference to the determination of the Florida courts, contrary to assertions in the dissent, is not impliedly or expressly an application of forum non conveniens. Instead, principles of comity require that the Florida judgment not be lightly cast aside (Matter of Lang v Lang, 9 AD2d 401, 406-407, affd 7 NY2d 1029). Forum non conveniens is concerned with the convenience of parties and courts; the comity principle here is concerned with the welfare of children and restraint on abuse of the judicial process.
*742 Certainly, it is beyond cavil that in custody cases principles of comity may not be rigidly applied to the detriment of the children (Matter of Bachman v Mejias, 1 NY2d 575, 581). But that is not the point. The point is rather that successive contradictory determinations by courts of sister States, even if with "jurisdiction”, are unseemly and intolerable in a Federal union. Such contradictory determinations are hardly justified by the flexibility of res judicata and full faith and credit principles in child custody matters. That is the sense of the holding in the Nehra case and of the Uniform Child Custody Jurisdiction Act adopted by many of the States to rid child custody matters of the incubus of child-snatching and forum-shopping.
The policy articulated in the Nehra case (supra) and in the Uniform Child Custody Jurisdiction Act, to become effective in New York on September 1, 1978, is a strong one (L 1977, ch 493; Domestic Relations Law, § 75-i, subd 2). Of course, it is not an absolute so long as the paramount concern remains the best interest of the child rather than the dignity of courts (see Matter of Lang v Lang, 9 AD2d 401, 405, supra). A different case would be presented if the immediate physical and mental welfare of children required, vitally and directly, that the children be retained in this jurisdiction and that the courts in this State determine who shall have custody of them. Factors raising those difficult issues are not present in this case. It is the courts of Florida that should adjudicate the ultimate custody dispute if "priority * * * be accorded to the judgment of the court of greatest concern with the welfare of the children” and "[djenigrated in rank * * * be the consequences of child-snatching” (Matter of Nehra v Uhlar, 43 NY2d 242, 251, supra). There is nothing presented in this case which suggests that the courts of the sister State are not competent or ready to do justice between the parties and for the children.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the petition dismissed.

 Explicit reference in the dissent to the charges of misconduct by the mother, however irrelevant, suggests response.
The couple had met when the mother was employed as a clerical assistant by a professor of law in the same university in which the father was a professor in the business school. She is much younger than the father and moved to Florida with the children only upon breakup of the marriage.
*741 The misconduct detailed in the father’s affidavit is not "unquestioned”; it is disputed. The mother denies, in her answering papers, most of the "aifairs” alleged by the father. She also denies any police raid on her home. And she denies sleeping with male friends in the presence of the children.
Moreover, the mother’s affidavit, if believed, indicates that the father may be a less than fit parent. The father, a man then over 50, divorced his wife of many years only two months before marrying petitioner. At the time of their marriage, the couple’s oldest child was already born, and the mother had had two abortions as a result of her relations with the father. In response to allegations that the mother smoked marihuana in front of the children, the mother accuses the father of doing the same. The father appears to be something of a "nomad”, and, as noted, when inconvenient to care for the children himself, he has left them out of State with his first wife or his daughter, then a college student.
None of this is relevant on the limited appeal before the court. The charges and countercharges have never been resolved. The determination at the hearing referred to in the dissent is not brought up for review on this appeal pursuant to CPLR 5601 (subd [d]). At Supreme Court the only witnesses who testified were the father and a single hostile neighbor of the mother in Florida. The mother, evidently because the hearing was held in New York far from all witnesses, did not participate in the hearing and called no witnesses. Thus, the inferences drawn in the dissent are unsupported in the evidentiary record before this court.