PAMELA J. APPELBLOM, Respondent, v PAUL H. APPELBLOM, Appellant.

Fourth Department, January 19, 1979

APPEARANCES OF COUNSEL

*Alderman, Alderman, Samuels & Schepp (Bernard Samuels and Eric M. Alderman* of counsel), for appellant.

*Seidenberg & Strunk (Faith A. Seidenberg* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

We are called upon to determine whether a New York State court may exercise its jurisdiction by modifying an interim child custody order made by the Superior Court of California during the pendency before it of a custody proceeding. Restated, the question posed is whether the New York courts are required to give full faith and credit to the California order.

The parties were married in California on March 7, 1971, in which State their only issue, Eric, was born on June 9, 1973. The parties were divorced in March, 1975 and under the decree the California court gave custody of the child to petitioner-respondent mother subject to reasonable rights of visitation. On June 8, 1977 the California court made an order, based upon a stipulation between the parents, modifying the visitation and support provisions of the divorce decree. The mother was permitted under the order to move to Syracuse, New York, and maintain Eric's physical and legal custody, and the father was granted rescheduled visitation rights at his California residence and directed to pay all travel expenses of the mother and Eric related to visitation. In September, 1977 the mother returned the child to the father in California in compliance with the visitation schedule and during the stay the father instituted a modification proceeding in the California court. Pending the hearing the court awarded custody of the child to the father and directed that Eric not be removed from its jurisdiction. On December 20, 1977 the California court made an order (1) adjudging that pending a further hearing in the matter, "California has jurisdiction to make a child custody determination and other orders under the Uniform Child Custody Jurisdiction Act", (2) awarding the father legal and physical custody of the child with reasonable rights of visitation to the mother in California "pending completion of the custody investigation", (3) directing that neither party "shall remove the minor child * * * from the jurisdiction" of the California court, and (4) directing

a formal custody investigation by the San Mateo County Probation Department and that a written report be filed with the court. All other issues were reserved for future determination.

Although the mother claims that no formal hearing was ever held in California at which she could present witnesses and that no decision in writing was received by her from the California court, it is not disputed that she, the father and their attorneys appeared in the proceeding, at which time the father claims that the testimony of both parties was received and a probation interview of all the parties and others was conducted. The December 20, 1977 California court order recites the appearance of both parties in person and by their attorneys and the hearing of testimony. Further, the father claims that the probation report referred to in the order of the California court was completed and notice thereof sent to both attorneys on March 1, 1978.

In May, 1978 the father left the child with the mother in New York State. He claims that the mother was permitted a six-week period of visitation with the child based upon the oral agreement of the parties and the recommendation of the California Probation Department. This is not refuted. On June 6, 1978 the mother made an application in the Supreme Court of New York State, County of Onondaga, for an order "overturning the modification of the divorce decree" which granted custody of the child to the father and "returning custody of the child to the petitioner [mother] as in the original decree". The father appeared and sought an order dismissing the mother's order to show cause upon the ground that the State of New York lacks jurisdiction to determine the custody of the child, noting that an action is presently pending to determine his custody in the Superior Court of California, San Mateo County. He further requested the court to direct the immediate return of the child to him. By order dated June 20, 1978 Special Term granted temporary custody of the child to the mother "as in the original divorce decree" and ordered that he "be immediately returned to the custody of the petitioner [mother]".

On this appeal respondent-appellant father claims that the order of Special Term which modified the December 20, 1977 custodial order of the California court was an improper exercise of judicial power and in violation of the public policy of the State of New York, the principle of comity, the principle

of *forum non conveniens,* and the provisions of the Uniform Child Custody Jurisdiction Act. Petitioner-respondent mother on this appeal claims that the order of Special Term was a proper exercise of judicial power under the facts and circumstances of the case and further that appellant does not come before this court with clean hands because, contrary to Special Term's direction following the oral rendition of the order under appeal and the specific admonitions of the court, the father removed the boy from New York State and transported him to California where he now resides.

■ ■ The law is settled that the granting of full faith and credit in New York to orders of sister States does not apply to custody decrees with respect to children presently in New York. This principle was enunciated by the Court of Appeals in *Matter of Backman v Mejias* (1 NY2d 575, 581), where the court stated: "The responsibility for the welfare of infants endows the court with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction * * * It transcends the rule of comity. Comity is a matter of policy * * * This rule of policy must yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards. The individual rights of infants to invoke the protection of the State in which they reside cannot be ignored." (See, also, *May v Anderson,* 345 US 528.) Even then, for our courts to intervene there must be a showing of a change in circumstances which has an effect upon the welfare of the child (16 NY Jur, Domestic Relations, § 975, pp 585-586; see, also, 2 Foster-Freed, Law and Family, § 29:35). New York is not required to accept the disposition made by the California court but may determine this custody issue based solely on the welfare of the minor. The rule is easily stated; its application to the facts and circumstances of the individual case presents problems.

■ There are established guidelines, however, which have been designed to avoid jurisdictional battles between sister States. "[S]uccessive contradictory determinations by courts of sister States, even if with 'jurisdiction', are unseemly and intolerable in a Federal union" *(Martin v Martin,* 45 NY2d 739, 742). The Court of Appeals has outlined a system of priority to avoid these abhorrent and vexatious conflicts *(Matter of Nehra v Uhlar,* 43 NY2d 242, 251): "Priority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded to the first custody

awarded in litigation or by voluntary agreement. Similarly qualified priority should also be accorded to the judgment of the court of greatest concern with the welfare of the children, that is, the court of domicile, residence, and legal dissolution of the sundered marriage. Denigrated in rank should be the consequences of child-snatching, flight from the courts of jurisdiction, and defiance of legal process and judgments. Denigrated in rank, to some degree, should also be the natural or manipulated 'satisfaction' of young abducted children with the homes where they presently abide."

Applying these principles we conclude that Special Term improvidently exercised its judicial power in retaining jurisdiction under the facts and circumstances of this case. The California court dissolved the marriage between the parties and granted custody of the child to the mother. Its jurisdiction over the parties was undisputed—all members of the family were residents and domiciliaries of California. Thus, it ostensibly is the court of "greatest concern" with Eric's welfare. The California court permitted the mother, who possessed legal and physical custody, to remove the child to New York State. With both parents and the child before the court, it conducted a hearing in which testimony was adduced and exercised its power to modify its own decree by making an interim order granting custody to the father and directing that the infant remain within California. The claim that the child was returned to the mother in New York State for limited visitation purposes is uncontroverted. Thus at the time the mother instituted the within proceeding, the infant resided in California in his father's custody. In the mother's application at Special Term she made conclusory statements that the child's best interests lie with her; she alleged no misconduct or unfitness of the father. Indeed, Special Term did not consider any change of circumstances before modifying the California order; it conducted no hearing and reviewed only the affidavits of the parties. It restored custody to the mother in accordance with the original divorce decree and modified the latest California order without proof or directing a hearing to take proof. Special Term had no factual basis upon which to modify the California order; it should not have retained jurisdiction of the custody matter. The primary principle of the child's best interest was never considered. Apparently the court was concerned solely with the claim of the mother that her rights should be governed by the original divorce decree. The mere

physical presence of this child in New York State at the outset of this proceeding is an insufficient ground upon which to base a determination which in effect modified an order of the California court.

It is unnecessary to reach the question as to whether or not the provisions of the Uniform Child Custody Jurisdiction Act (L 1977, ch 493; Domestic Relations Law, § 75-a *et seq.*),* which became effective September 1, 1978, apply. The action of the court here would have been proscribed by the provisions of this act if the proceeding were instituted after September 1, 1978. Section 75-g of the Domestic Relations Law provides:

"1. A court of this state shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

"2. Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section seventy-five-j of this article. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

"3. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections seventy-five-s through seventy-five-v of this article. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court

_____

* Uniform Child Custody Jurisdiction Act was adopted by California (West's Ann Cal Codes, Civ Code, §§ 5150-5174).

to the end that the issues may be litigated in the more appropriate forum."

While a rational argument may be made that the terms of the act control this case (see *Kelly v Long Is. Light. Co.,* 31 NY2d 25, 29, n 3; see, also, *Smalley v Associated Transp.,* 52 AD2d 979 [court gave effect to the law as it existed at the time of decision]; *Congregation Gates of Prayer v Board of Appeals of Vil. of Lawrence,* 48 AD2d 679, 680 [State Building Construction Code, which was adopted after judgment under review, was applied by the court as the law at the time of decision]; *Matter of Lunden v Petito,* 30 AD2d 820 [amended town ordinance in effect at time of appeal held to be controlling]), the facts before the court (no less than the policy expressed in the act) mandate an abstention of the exercise of jurisdiction by the New York courts. "The policy articulated in the *Nehra* case *(supra* [43 NY2d 242]) and in the Uniform Child Custody Jurisdictional Act * * * is a strong one (L 1977, ch 493; Domestic Relations Law, § 75-i, subd 2)" *(Martin v Martin,* 45 NY2d 739, 742, *supra).* The record contains nothing to support a conclusion that the immediate physical and mental welfare of the child requires "vitally and directly, that the [child]ren be retained in this jurisdiction and that the courts in this State determine who shall have custody of [him]" *(Martin v Martin, supra,* p 742). California courts should adjudicate the ultimate custody of Eric and there is nothing presented which suggests that it is "not competent or ready to do justice between the parties and for the [child]ren" *(Martin v Martin, supra,* p 742).

In considering the import of a Pennsylvania court decree we have held that although the courts of this State have jurisdiction to alter the custody of a child within the State, "nevertheless that decree, rendered by a [sister-State] court with jurisdiction of the infant by reason of domicile, is entitled to 'willing recognition, except in extraordinary circumstances affecting the health and welfare of the children'. *(Matter of Lang v. Lang,* 9 A D 2d 401, 409, affd. 7 N Y 2d 1029.) * * * [A] prior custody award made by a court of a sister State should not be disturbed unless it is shown that there has been 'an extraordinary intervening change in circumstances'. *(People ex rel. Sloane v. Sloane,* 20 A D 2d 862, affd. 15 N Y 2d 561.)" *(Matter of Metz v Morley,* 29 AD2d 462, 464; see, also, 11B Zett-Edmonds-Schwartz, NY Civ Prac, § 41.03[2], p 41-31.)

Since there has been no showing here of any change in circumstances, the principle enunciated in *Metz (supra)* must be applied in the case at bar.

A parent with whom a child is visiting should not be encouraged, except under extraordinary circumstances, to attempt to divest the other parent of custody awarded by a sister-State decree. If an unwarranted attempt is made, the court should recognize the foreign decree by applying the principles of comity, depending on such factors as the nature and motive of the application to the New York court, the effect of the application on the other party (the father) and the continued interest which the sister-State court has in the enforcement of its decree (11B Zett-Edmonds-Schwartz, NY Civ Prac, *supra; Bergen v Bergen* 439 F2d 1008). In the instant case, the child is presently in California, even though he was taken there by the father in violation of the Special Term order. The close nexus of the parties to California indicates that that State is the most appropriate place to litigate any problems concerning visitation or custody. Most importantly the application is not based upon any claims of misconduct or unfitness on the part of the father or any adverse effect on the child by reason of custody having been granted to the father. In the absence of factual allegations showing a change in circumstances no question is presented concerning the effect of the California custody award to the father and whether modification of the award is required (cf. *Matter of Duke v Duke,* 37 AD2d 83). Even though the mother claims on this appeal that the father has obtained custody of the child in violation of the order of Special Term, the circumstances require that, in the best interests of the child, "the unlawful acts be blinked" (see *Matter of Bennett v Jeffreys,* 40 NY2d 543, 550; *Lang v Lang,* 9 AD2d 401, 408-410).

Accordingly, the order of Special Term should be reversed and the petition dismissed.

MOULE, J. P., CARDAMONE, DILLON and HANCOCK, JR., JJ., concur.

Order unanimously reversed, without costs, and petition dismissed.