*540 OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Thomas Phillip P. is a seven-year-old boy who is presently in the State of New York.[2] In this custody proceeding initiated by his paternal grandfather, Severio P., pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), both the child’s Law Guardian and the local child protective service join the petitioner in urging this court to exercise jurisdiction. The respondents are the boy’s maternal grandfather, Donald Y., and his wife, Dolores Y., who reside in Ohio. By order to show cause they move to dismiss this proceeding, arguing that New York lacks jurisdiction. A hearing was held on the factual issues raised by the motion, during which extensive testimony was taken and several exhibits were received.
After carefully examining the demeanor of this child in two in camera interviews and upon all the evidence adduced at the preliminary hearing, this court finds by clear and convincing evidence that Thomas is in such extreme emotional distress as to constitute an emergency within the meaning of the UCCJA (Domestic Relations Law § 75-d [1] [c] [ii]). Accordingly, the motion of the respondents to dismiss this proceeding on jurisdictional grounds is denied. In order to fully explain the court’s ruling, a review of the facts and the applicable law is required.
The child’s father died of a drug overdose in California in August of 1983. In August of 1984, the boy’s mother, Donna P., sent him from California to Ohio to reside with her father and stepmother, respondents herein. Unfortunately, shortly thereafter, the child’s mother was the victim of an assault as a result of which she sustained severe brain damage. She remains institutionalized in California in a long-term care facility.[3] The respondents enrolled Thomas in an Ohio school and, on December 21, 1984, obtained a temporary order of custody from the Court of Common Pleas, Trumbull County, Ohio.[4]
*541 On April 4, 1985, the petitioner went to Ohio to pick up Thomas for an Easter visit in Staten Island that had been agreed upon and arranged between the two sets of grandparents. When in the company of petitioner, Thomas immediately com plained that he had been beaten by the respondent Dolores Y. and that he did not wish to return to Ohio. Petitioner observed a mark on the child’s cheek as well as other marks, scratches and bruises. He thereupon filed this proceeding for custody in the Family Court on April 9, 1985.
Upon reviewing the petition, the court interviewed the child in camera. Thomas immediately impressed the court as a very fragile child in crisis. There was an obvious discoloration on the left side of his face and a scratch on his chest. Thomas stated in an apparently credible way that his maternal stepgrandmother, Dolores Y., beat him on the bare butt with a belt more than once; that she caused a black and blue mark on his cheek by pinching it; that she inflicted scratches on his chest by pushing her finger against him in a rapid-fire movement; and that she pulls his hair. Thomas emphatically stated that he did not wish to return to Ohio.
The court assigned a Law Guardian for the child and ordered Special Services for Children, the local child protective service, to investigate. (Family Ct Act §§ 249, 1034.)
The respondent grandparents appeared by counsel and moved to dismiss the proceeding for lack of jurisdiction. Two contentions are advanced by the respondents. They maintain that pursuant to the UCCJA (Domestic Relations Law § 75-i), jurisdiction should be declined because the petitioner engaged in “self-help” and “child-snatching.” This argument is without merit. The visit to New York was arranged by and between the petitioner and respondents. Clearly the child was not “snatched.” Furthermore, the petitioner did not resort to “self-help” but, on the contrary, he promptly sought the assistance of the courts in this State. Bringing a custody petition in this court is the antithesis of self-help. It should be further noted that even where a petitioner has engaged in “reprehensible conduct”, declination of jurisdiction is permissive and not mandatory (Domestic Relations Law § 75-i [1].) The court may, nevertheless, exercise jurisdiction where such is “required in the interest of the child.” (Domestic Relations Law § 75-i [2].)
Before addressing respondents’ other argument, the court must comment on the behavior of the petitioner when he initially appeared before the court on April 9,1985. The transcript of that proceeding was admitted into evidence at the hearing. It *542 is clear that the petitioner repeatedly lied to this court on the single question of where Thomas was sleeping during his stay on Staten Island. While the petitioner had stated under oath that the child had his own bed and bedroom, Thomas was, in fact, sleeping in the same bed as his uncle. The transcript amply reveals the court’s upset at petitioner’s behavior. Obviously, however, this behavior is not determinative of the jurisdictional issue before the court. More importantly, the court finds that the petitioner was otherwise truthful in his testimony throughout the proceeding.
In moving to dismiss the proceeding, the respondents argue that there is no basis for the exercise of jurisdiction by the courts of this State. They specifically deny that there has been any showing of an “emergency” within the meaning of the UCCJA (Domestic Relations Law § 75-d [1] [c] [ii].)
The UCCJA was enacted to deter abductions of children and to avoid jurisdictional conflicts with courts of other States. (Domestic Relations Law § 75-b.) In this case, Ohio meets the statutory definition of the child’s “home state”, in that he resided there for at least six consecutive months. (Domestic Relations Law § 75-c [5].)[5] On the facts of this case, the only permissible basis for the exercise of jurisdiction by the courts of this State under the UCCJA is contained in Domestic Relations Law § 75-d (1) (c) (ii): “[T]he child is physically present in this state and * * * (ii) it is necessary in an emergency to protect the child”. It is clear that the mere physical presence of the child in this State is not a sufficient basis per se for the exercise of jurisdiction. (Gomez v Gomez, 86 AD2d 594, affd 56 NY2d 746.) There must, in addition, be an emergency that is real and immediate, and of such a nature as to require State intervention to protect the child from imminent physical or emotional danger. (Martin v Martin, 45 NY2d 739; Conticello v Conticello, 91 AD2d 1008; Gomez v Gomez, supra.) To make a finding of an “emergency” lightly would be to undercut the express purposes of the UCCJA.
Based in large part on Thomas’ demeanor at the initial in camera interview, the court ordered Family Court Services to evaluate the child. Dr. Richard Hill is the staff psychiatrist at Family Court Services. He stated that Thomas was “traumatized” and that his return to Ohio would carry a risk of psychological harm. Dr. Hill noted a residual mark on the child’s *543 cheek. He stated that even if the allegations of abuse were not true, they reveal the “child’s perception of what he’s been through.” Dr. Hill maintained that by making these allegations, whether founded in reality or not, Thomas is “trying to tell us something.”
The child was also evaluated by Mr. James Breslin of Family Court Services. Mr. Breslin has a masters degree in social work from New York University and has eight years’ experience with Mental Health Services. Mr. Breslin testified that Thomas is in such a serious psychological state of mind that he should not be returned to Ohio at this time. He defined the boy’s relationship with the respondents as “very, very problematic,” “disturbed,” and “clearly broken down.” His opinion was based on the consistency of the child’s accusations against the respondents and the intensity and unrelenting nature of his negative attitude toward them. Mr. Breslin stated that the child had not been “brainwashed” by the petitioner. He similarly rejected respondents’ theory that the boy’s feelings are emanating from a materialistic preference for the paternal grandparents’ home.
Mr. Breslin concluded that Thomas, a very frightened child, would be traumatized by return to Ohio at this time. He further stated that such return would be harmful to the child’s emotional well-being, irrespective of whether he was physically abused in Ohio, and that Thomas would experience regression if returned to his Ohio environment.
During the hearing on the jurisdictional issue, the court conducted a second in camera interview with Thomas in the presence of the Law Guardian. (Matter of Lincoln v Lincoln, 24 NY2d 270.) The court found Thomas to be in an extremely alarming state of mind. He repeatedly gestured during the interview both to emphasize his feelings and seemingly to fight back tears. Thomas repeated his allegations of abuse by the respondent stepgrandmother. He stated that his maternal grandfather had said his grandmother did not hit him hard enough and that, if he had to hit him, he would make his butt bleed. The interview was sad and heartrending. Thomas impressed the court as an intelligent sensitive child in great emotional distress. His in camera testimony seemed highly credible. The court also notes that the stepgrandmother, in her affidavit dated April 17, 1985, admitted that she hit Thomas twice with a belt on his bottom because he received a bad school report.
The UCCJA has been strictly construed by the New York courts, especially in the area of emergency jurisdiction, where a *544 decision to exercise jurisdiction is not to be made in a facile manner. (See, Matter of Priscilla S. v Albert B., 102 Misc 2d 650, 655.) A finding of emergency jurisdiction is not synonymous with a finding that it is in the child’s best interest to be detained in New York. A child’s preference standing alone does not constitute an emergency. (Irene R. v Inez H., 96 Misc 2d 947.) Rather, there must be an immediate crisis mandating detention of the child here. (Conticello v Conticello, supra.)
In Conticello v Conticello (supra), the Second Department affirmed the dismissal of a custody proceeding in a case of apparent forum-shopping. While the father had the children in New York for a Christmas visit, he petitioned the Supreme Court for custody, even though only months before he had been denied a request for temporary custody by the Florida court that had made the original custody award and had scheduled a final custody hearing for February. His claim of an emergency basis for New York jurisdiction was “refuted by the report of the psychiatrist whom petitioner engaged to interview the children.” The Appellate Division also noted that he made the same allegations against the children’s mother in the Florida temporary custody hearing two to three months earlier in that the allegations were “far less serious than those made in Martin v Martin (45 N.Y.2d 739) where jurisdiction in New York was similarly declined.” (91 AD2d, at p 1009.)
In Martin v Martin (supra), the Court of Appeals reversed the Appellate Division’s order for a custody hearing in New York, stating: “A different case would be presented if the immediate physical and mental welfare of children required, vitally and directly, that the children be retained in this jurisdiction and that courts in this State determine who should have custody of them.” (Martin v Martin, supra, at p 742 [1978].)
In De Passe v De Passe (70 AD2d 473 [4th Dept 1979]), the court reversed a finding of emergency jurisdiction under the UCCJA. The unsubstantiated assertions were that the defendant “drinks excessively and spends much of his time away from home; that he has unreasonable spending habits, often leaving plaintiff and the children without necessities; and that the defendant has been unresponsive to plaintiff’s attempts to solve these problems.” (70 AD2d, at pp 474-475.) In that case there was no showing of an immediate danger to the children, and jurisdiction was declined in New York since a divorce and custody action was already pending in a Maryland court.
To exercise emergency jurisdiction under the UCCJA, it must be shown that the child will be harmed physically or emotionally if jurisdiction is not exercised in New York (Gomez v Gompz, *545 supra.) The emergency must exist at the time the determination is made to exercise jurisdiction. In Gomez v Gomez (supra), allegations of an emergency were not made until a hearing held after a determination of jurisdiction was made. Furthermore, the allegations pertained to “past” mistreatment and were “unsupported.” Hence, the Supreme Court custody order was reversed and a dismissal was granted.
The instant case is clearly distinguishable from those cited cases above where jurisdiction was declined. Here the court finds by clear and convincing evidence that Thomas is in such a state of emotional turmoil and crisis that his return to Ohio at this time would seriously jeopardize his well-being and place him at great risk. The court makes this finding irrespective of whether or not the behavior of the stepgrandmother rises to the level of actionable abuse or neglect.
Accordingly, the motion to dismiss is denied, and the matter is adjourned to July 26,1985, for all purposes. The respondents are directed to file answering papers to the petition by that date. Temporary custody is awarded to the petitioner on the condition that he cooperate with Family Court Services in obtaining immediate counseling for Thomas.
The foregoing constitutes the decision and order of this court. Notify parties and attorneys.
The clerk of the court is directed to forward a copy of this decision and order to the Court of Common Pleas, Trumbull County, Ohio, with a request for a certified copy of their records, pursuant to Domestic Relations Law § 75-v.

. This child is called Phillip by his maternal grandparents and others in Ohio. He is called Thomas by his paternal grandparents, and the child told the court he prefers to be known as Thomas.

. [1] Though named as a third respondent in this custody petition, no affidavit of service on Donna P. has been filed with the court. She is hereby dropped as a party to this proceeding; any orders which this court may make are without prejudice to any future proceeding she may initiate should she recover. (See, CPLR 1003.)

. The petitioner herein was not a party to the Ohio proceeding, which appears to have been ex parte, and the respondents have not apprised this court of the pendency of any proceeding in Ohio (Domestic Relations Law § 75-g [3]).

. The child resided approximately eight months in Ohio. Most of the child’s life he resided in California, but it is undisputed that he previously lived on Staten Island with petitioner for one year, when his parents were being divorced.