[597 NYS2d 672]

In the Matter of VANESSA E., an Infant. IRMA B. et al., Appellants; DAVID E., Respondent.

First Department, May 11, 1993

### APPEARANCES OF COUNSEL

*Eugene J. Fastook* for Irma B., appellant.

*Eric W. Berry* for respondent.

*Nancy Dunbar* of counsel *(Karen Freedman,* attorney), for Lawyers For Children, Inc., *Law Guardian,* for infant.

### OPINION OF THE COURT

SULLIVAN, J. P.

Vanessa E., the subject of this custody proceeding, is the nine-year-old daughter of the parties, whose marriage was dissolved on September 14, 1989 by decree of the Iowa District Court, Iowa County, which awarded the parties joint custody of the child, with primary physical care being placed with the father and liberal visitation allowed to the mother. The child continued thereafter to reside with the father and paternal grandparents in Iowa. The mother has been a New York City resident since 1989.

On August 18, 1992, after the child had been in New York with the mother, for the previous five weeks pursuant to the divorce decree's annual six-week summer visitation schedule,

the mother filed this custody petition in Family Court, New York County, based on the father's alleged physical and sexual abuse of the child. Family Court (Edward M. Kaufmann, J.), ex parte, awarded temporary custody of the child to the mother pursuant to Domestic Relations Law § 75-d (1) (c) (ii),* the emergency jurisdiction provision of the Uniform Child Custody Jurisdiction Act, which permits New York courts to exercise jurisdiction where, *inter alia*, the child is physically present in New York and has been subjected to sexual or physical abuse *(see, Matter of Severio P. v Donald Y.,* 128 Misc 2d 539), and made the petition returnable on September 14, 1992. Further evaluation was to be provided. The child was examined that same day at the Sexual Abuse Evaluation Clinic at New York Hospital, which recorded a history from the child of sexually inappropriate and voyeuristic behavior by the father.

On the return date, the father moved, *inter alia*, to dismiss the petition so that the question of the child's custody could be adjudicated in Iowa. At that time, the court received more documentary evidence, including a September 1, 1992 report from the Sexual Abuse Evaluation Clinic at New York Hospital and a September 19, 1992 New York City Child Welfare Administration Report. The report from the Sexual Abuse Clinic indicated that "besides the things like looking at her without any clothing on and the one time that he put his finger inside her vagina when he was putting cream on her", what bothered the child the most about her father was "[t]hat he ma[d]e me give him full body massages". According to the child, the father told her, "[D]on't tell your mother about the full body massages when you visit her". The court extended the order of temporary custody and adjourned the matter to September 29, 1992, when the father's motion was returnable.

On September 28, 1992, the father served an amended notice of motion advising the court that, on September 21, 1992, he had initiated a parallel proceeding in the Iowa District Court to enforce his custody rights. The Iowa petition sought to modify the joint custody provision of the divorce decree, *inter alia*, to award the father sole custody and pro-

---

* Domestic Relations Law § 75-d (1) (c) (ii) provides: "1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when * * * (c) the child is physically present in this state and * * * (ii) it is necessary in an emergency to protect the child."

vide for visitation by the mother in the State of Iowa only. Without hearing any argument or taking testimony and despite its specific finding that the mother's "allegations are not 'vague and unsubstantiated' " (quoting *Matter of Hernandez v Collura,* 113 AD2d 750, 752), the Family Court (Jeffry H. Gallet, J.) declined to exercise jurisdiction in the matter because of the pendency of the similar proceeding in Iowa, the child's home State for the past five years, which, the court felt, had the closest ties to the child and the persons who have interacted with her over that time period. On the consent of the father, the court continued the order of temporary custody with the mother, pending a determination of the issue in Iowa. We reverse.

Domestic Relations Law § 75-d, which is part of article 5-A of the Domestic Relations Law, otherwise known as the Uniform Child Custody Jurisdiction Act (UCCJA; L 1977, ch 493, eff Sept. 1, 1978), codifies the circumstances under which a court of this State may determine the issue of custody even though the courts of another State would appear to be as appropriate or even more appropriate a forum to resolve the issue under common-law jurisdiction principles. Domestic Relations Law § 75-d (1) (c) (ii) provides for the exercise of jurisdiction in an emergency situation "vitally and directly" affecting the health, welfare and safety of the subject child. *(Martin v Martin,* 45 NY2d 739, 742.) A primary consideration for the exercise of emergency jurisdiction is whether a return to the home jurisdiction would place the child in imminent risk of harm. *(See, Matter of Michael P. v Diana G.,* 156 AD2d 59, 66, *lv denied* 75 NY2d 1003.) As the language of the statute makes clear, once an emergency is found to exist, the court has jurisdiction and is empowered to determine the issue of child custody. The emergency and the child's safety outweigh all other considerations. *(See, supra;* Domestic Relations Law § 75-d [1] [c] [ii].)

Before entertaining a petition such as the instant one, a court must resolve two issues: whether jurisdiction lies pursuant to section 75-d and whether other related sections, 75-g (simultaneous proceedings in other States), 75-h (inconvenient forum) or 75-i (jurisdiction declined because of conduct), preclude the exercise of jurisdiction or compel a declination thereof in deference to the jurisdiction of another forum. (Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, at 302.) Thus, whether a court should, in all cases where jurisdiction would

otherwise lie, exercise its emergency powers is, of course, another question.

Domestic Relations Law § 75-g (1) specifically requires a New York court to decline jurisdiction under section 75-d "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with [the UCCJA]." *(See, Vanneck v Vanneck,* 49 NY2d 602, 609.) Here, as noted, the filing of the petition in Iowa occurred subsequent and in response to the commencement of this proceeding. Nor has the mother either "wrongfully taken the child from another State or * * * engaged in similar reprehensible conduct" so as to warrant a declination of jurisdiction. (Domestic Relations Law § 75-i [1].)

While a New York court may also decline to exercise jurisdiction on the ground of inconvenient forum (Domestic Relations Law § 75-h), before it does so it must consider, *inter alia,* "if it is in the interest of the child that another state assume jurisdiction" (subd [3]) and may take into account whether "substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state." (Subd [3] [c].) In that regard, the child presently resides in New York with her mother, the joint custodial parent, and attends school here. The experts who have evaluated the child and whose testimony is essential reside and work in New York City. The Child Welfare Administration worker who continues to investigate this matter and recommends that the child remain here with her mother resides and works in New York City. Except for the father, all the essential witnesses are within the State of New York. Lawyers For Children, the Law Guardian, has assigned both an attorney and a certified social worker to represent the child and articulate her position to the court. We also note that, in an affidavit submitted to this Court in response to a motion to modify a stay pending appeal, the mother states that the child is undergoing therapy here. For these reasons New York is indeed a suitable, if not superior, forum for the resolution of the custody issue. Thus, Family Court's declination of jurisdiction on the ground of inconvenient forum (Domestic Relations Law § 75-h) was, on the record presented, incorrect as a matter of law.

Having declined jurisdiction after finding that emergency jurisdiction existed, Family Court continued, albeit with the father's consent, the order of temporary custody with the

mother "to insure the child's safety", pending a "determination, after appropriate hearing", of the custody issue in Iowa. This was error as well. Once a court declines to exercise subject matter jurisdiction, it must dismiss the action and may not impose conditions or issue further orders. *(See, Dyer v Cahan,* 150 AD2d 172, 173.) We are not unmindful of the quandary in which Family Court found itself. Recognizing its responsibility to ensure the child's safety, it ordered that the child's custody remain with the mother in New York while at the same time paying deference to the child's home State. The court, however, could not simultaneously serve both interests.

Accordingly, the order of the Family Court, New York County (Jeffry H. Gallet, J.), entered on or about October 6, 1992, which, *inter alia,* dismissed the petition, should be reversed, on the law and on the facts, without costs or disbursements, the petition reinstated, the temporary award of custody continued and the matter remanded for further proceedings.

CARRO, KUPFERMAN and RUBIN, JJ., concur.

Order of the Family Court, New York County, entered on or about October 6, 1992, which, *inter alia,* dismissed the petition, is reversed, on the law and on the facts, without costs or disbursements, the petition reinstated, the temporary award of custody continued and the matter remanded for further proceedings.