OPINION OF THE COURT
Anthony J. Sciolino, J.
Urging the court to act in the best interests of the children, even if it lacks personal and/or subject matter jurisdiction ("Just because she has the law on her side, doesn’t make it right”),[1] Petitioner requests that the Respondent’s motion to dismiss on jurisdictional grounds be denied. I decide as follows:
FACTS
On April 3, 1997, the Monroe County Department of Social Services (Petitioner) filed a petition alleging that Patricia Ann P., formerly known as Patricia Ann R. (hereinafter Mother), a resident of the State of Florida, has neglected S. R. (date of birth Oct. 17, 1979) and A. R. (date of birth July 24, 1983). According to the petition, all of the acts of alleged neglect occurred in the State of Florida, the most recent in 1994, with the exception of one allegation of neglect in Monroe County, New York, when Mother came here during Christmas 1995 to visit with the children.
The children (hereinafter S. and A.) are the children of the Respondent and Ahmad R. (hereinafter Father). Mother and Father were married in 1980, which marriage was dissolved by a Florida judgment of divorce in 1986. At the time of the divorce, Mother was awarded primary custody of three children, S., A. and Sara R. (date of birth Oct. 10, 1981). In 1988 an acquaintance of Mother entered her Florida home and abducted, raped and brutally attacked the two daughters, killing Sara and seriously injuring S. Father petitioned the Florida court for a change of physical custody, which was granted in an order and judgment dated June 7, 1989. That order, inter alia, granted Mother "liberal contact and access with the children”, including extended summer and Christmas visitation. Father was also required to facilitate continued counseling for the children in Rochester which he failed to do.[2] Counseling for S. was discontinued in 1992 and for A. in 1993 upon Father’s contention that it was no longer needed.
*730 The children visited with Mother in Florida during the summers of 1990, 1991, and 1993, and for the three Christmas holidays in those years, while residing the remainder of the year with Father in Monroe County, New York. Summer visitation did not occur during the summer of 1994, as the parties agreed to postpone visitation so S. could participate in a softball clinic.[3] Mother drove to Monroe County to visit with the children during Christmas 1994, after Father refused to send them to Florida pursuant to their prior agreement.[4] No visit occurred during the summer of 1995. Despite the attempts of Mother and her attorney to arrange a Christmas 1995 visit, Father refused to allow Mother to speak with the children when she telephoned and refused to permit that visit to occur. Mother filed a motion for contempt against Father in the State of Florida on December 18, 1995. That matter proceeded to a hearing and on May 28, 1996 Father was found in willful contempt of the Florida order. Counseling with Mother and the children was ordered by the Florida court, as well as visitation during the summer of 1996.
On June 12, 1996 Mother filed an emergency motion for contempt, alleging that Father had failed to comply with the May 28, 1996 order. Father was again found in willful contempt, and on June 21, 1996 was again ordered to provide counseling for the children and visitation with Mother during the summer of 1996. Counseling was subsequently reinstituted by Father with their former counselor. No appeal was taken from the order of May 28, 1996 or the order of June 21, 1996.
Father filed an order to show cause in this court (docket No. V-0234/36-86M) on June 7, 1996 seeking an order to prevent the children from visiting with Mother as required by the Florida order. The order to show cause was denied and dismissed on June 17, 1996 by the Honorable Ann Marie Taddeo based upon lack of jurisdiction in light of the pending Florida proceedings.
On June 21, 1996, the children, by their guardian ad litem, who now represents them in this court, filed an order to show cause in the Monroe County Supreme Court to obtain a *731 temporary restraining order prohibiting them from being removed from Monroe County, New York, and seeking to modify the Florida order dated June 7, 1989 by deleting the provisions providing for visitation. The relief requested was essentially the same relief requested in the order to show cause submitted to the Family Court two weeks earlier. A temporary restraining order was granted on June 21, 1996 and a hearing to determine jurisdiction was held. A decision was rendered on August 7, 1996 which found that New York State had jurisdiction over the matter.
In the meantime, Mother filed another motion for contempt in the Florida court and on July 19, 1996 Father was found in contempt for the third time. On August 5, 1996, Mother filed an order to show cause to modify custody in Florida. A hearing took place in Florida on September 27, 1996 wherein Mother was granted leave to file a petition to change custody, and an emergency petition for change of custody was filed on October 18, 1996. No responsive papers were filed by Father and a default was taken against him on January 30, 1997.
On February 7, 1997 the New York State Appellate Division, Fourth Department, unanimously reversed the Supreme Court decision and found that New York lacked jurisdiction to determine the issues of custody and visitation and dismissed the children’s petition in its entirety (Matter of Mott v Rivazfar, — AD2d —, 1997 NY Slip Op 01117 [4th Dept, Feb. 7, 1997]). The Florida court thereafter held a hearing on Mother’s petition for a change in custody. In a thoughtful decision and order of 36 pages, dated March 27, 1997, Honorable Michael Jones, Circuit Judge, First Judicial Circuit Court for Escambia County, Florida, granted Mother primary physical residence of the children, commencing 72 hours after the end of the children’s last school day, but no later than June 15, 1997. Among the reasons cited for the change in physical residence are Father’s: (1) repeated refusal to comply with the Florida court’s orders; (2) refusal to participate in the Florida litigation in a meaningful manner; (3) culpable conduct in alienating the children’s affection for Mother; (4) inappropriate exposure of the children to the news media; and (5) failure to address constructively the issues surrounding the death of Sara and the rape and assault of S.
Judge Jones also ordered that the children visit with Mother from April 3, 1997 to April 6, 1997, which provision was subsequently stayed to April 16, 1997. Judge Jones, in rendering his decision changing physical residence, was aware of the *732 children’s refusal to visit with Mother, and the children’s psychological reports. The children were represented in the most recent custody modification proceeding by a Florida guardian ad litem who spoke with them and with other interested parties, including Father, a stepmother, and the children’s psychologists. Judge Jones noted in his decision that while visitation was occurring in Florida through the summer of 1993, "the children enjoyed a warm and loving relationship” with Mother.
As noted above, the Monroe County New York Department of Social Services filed this neglect petition against Mother on April 3, 1997, 6 days after Judge Jones’ decision and 10 days before the ordered visit in Florida. The petition alleges that if the children are returned to the custody of Mother that "their mental, emotional and/or physical well-being would be at imminent risk”. A preliminary order of protection was requested from this court to prevent the children from being removed from Monroe County, New York, which would have effectively rendered the Florida custody order unenforceable. Such preliminary order was denied on April 4, 1997 for lack of a showing of "good cause” (see also, Family Ct Act § 154 [c]).[5]
On April 10, 1997, this court held a hearing on the issue of jurisdiction. The court has considered the arguments of counsel, their memoranda of law, moving and responding papers, the record on appeal in the children’s Supreme Court case, and all prior court proceedings, both in the States of Florida and New York.
DISCUSSION

I. Personal Jurisdiction

The instant action was commenced by Petitioner pursuant to article 10 of the Family Court Act. Section 1036 (c) of the Family Court Act states as follows: "[T]he court may send process without the state in the same manner and with the same effect as process sent within the state in the exercise of personal jurisdiction over any person subject to the jurisdiction of the court under section three hundred one or three hundred two of the civil practice law and rules, notwithstanding that such person is not a resident or domiciliary of the state, where the *733 allegedly abused or neglected child resides or is domiciled within the state and the alleged abuse or neglect occurred within the state.” (Emphasis added.)
A review of the allegations in the petition filed here reveals only one act that occurred in New York, an incident involving an attempted visitation by Mother in 1995, which she was apparently entitled to pursuant to a Florida order. Since that act, even if established, is not an act of neglect,[6] personal jurisdiction over the Respondent cannot be obtained by service of the summons outside New York. Petitioner, the children’s attorney and amicus cite earlier versions of the statute, outdated practice commentaries and cases in which the summons was served in New York. (See, Family Ct Act § 154 [c]; §§ 1013, 1036 [c]; Besharov, 1987, 1990, 1991 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1013, 1997 Pocket Part, at 135-136; Matter of Westchester County Dept. of Social Servs. [Martina P.], 211 AD2d 235 [2d Dept 1995].)
Accordingly, the petition must be dismissed. Moreover, even if personal jurisdiction over the Respondent could be obtained, the petition is subject to dismissal on other grounds.

II. Subject Matter Jurisdiction

A. Generally

Article 5-A of the Domestic Relations Law (known as the Uniform Child Custody Jurisdiction Act [UCCJA]) sets forth the conditions under which a court of this State can exercise jurisdiction over custody proceedings. Section 75-c (3) defines ”[c]ustody proceeding” as follows: " 'Custody proceeding’ includes proceedings in which a custody determination is at issue or is one of several issues including any action or proceeding brought to annul a marriage or to declare the nullity of a void marriage, or for a separation, or for a divorce, but not including proceedings for adoption, child protective proceedings or proceedings for permanent termination of parental custody, or proceedings involving the guardianship and custody of neglected or dependent children, or proceedings initiated pursuant to section three hundred fifty-eight-a of the social services law” (emphasis added).
*734 In addition, the court must consider the Parental Kidnaping Prevention Act of 1980 (28 USC § 1738A [hereinafter PKPA]), which requires every State to give full faith and credit to child custody determinations made by another State consistent with the provisions of the PKPA. Where the PKPA and a State’s version of the UCCJA conflict, the PKPA preempts State law. (See, Matter of Mott v Rivazfar, supra; Matter of Fleet v Scarola, 221 AD2d 339 [2d Dept 1995], lv denied 87 NY2d 965 [1996]; Capobianco v Willis, 171 AD2d 834 [2d Dept 1991].)
The court has subject matter jurisdiction over this neglect proceeding pursuant to New York Constitution, article VI, § 13 (b) (1), Family Court Act § 115 (a) (i) and article 10 of the Family Court Act (see, Matter of Westchester County Dept. of Social Servs. [Martina P.], 211 AD2d 235, supra). However, since Domestic Relations Law § 75-c (3) excludes child protective proceedings from the definition of a custody proceeding, article 5-A does not apply. Accordingly, the UCCJA’s emergency jurisdiction provisions (Domestic Relations Law § 75-d [1] [c] [ii]) cannot be invoked. In any event, there is no emergency (infra, at 734-735).

B. Emergency Jurisdiction

Petitioner, the children’s attorney and amicus argue that emergency circumstances, i.e., the children’s reluctance to have contact with Mother, require this court to ignore the strict jurisdictional mandates of the UCCJA and the PKPA. Emergency jurisdiction only permits the court to determine custody when "the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child”. (Domestic Relations Law § 75-d [1] [c].) The PKPA has a similar provision predicating jurisdiction on physical presence combined with abandonment or necessary emergency protection because the child "has been subjected to or threatened with mistreatment or abuse”. (28 USC § 1738A [c] [2] [C].)
To exercise emergency jurisdiction under the UCCJA, there must be evidence of "imminent and substantial” danger to the child in question. In Martin v Martin (45 NY2d 739, 742 [1978], rearg denied 45 NY2d 839 [1978]), the New York Court of Appeals declared that emergency jurisdiction may be invoked only where "the immediate physical and mental welfare of children [require], vitally and directly, that the children be retained” in this State. (Matter of Vanessa E., 190 AD2d 134 [1st Dept 1993]; Matter of Metcalf v Turner, 154 AD2d 792 [3d *735 Dept 1989]; Matter of Hernandez v Collura, 113 AD2d 750 [2d Dept 1985].)
New York courts have reserved emergency jurisdiction for bona fide demonstrable emergencies only. In Smith v Dulfron (NYLJ, Aug. 2, 1988, at 20, col 4 [Sup Ct, Nassau County]) the court refused to exercise emergency jurisdiction although one child threatened suicide and another threatened to run away if returned to Hawaii. After a psychiatric evaluation which found an absence of psychotic disturbances and a denial of suicidal thoughts, the Judge stated (supra, at 20, col 5) "the fact the children may be unhappy living with respondent does not require a different result.” (Sobie, 1989 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, 1997 Pocket Part, at 90.)
In De Passe v De Passe (70 AD2d 473 [4th Dept 1979]), the Appellate Division of this Department reversed a Supreme Court decision assuming jurisdiction where the allegations involved excessive drinking, unreasonable spending habits, time away from home and unresponsiveness. "These allegations, though deserving of consideration in any evidentiary hearing on the substantive custody issue, do not suggest emergency circumstances in which the welfare of the child[ ] vitally requires that the courts of this State determine custody” (supra, at 475). In Matter of Mitchell v Mitchell (117 Misc 2d 426, 430 [Sup Ct, Westchester County 1982]) the court held that emergency jurisdiction could not be predicated on allegations of "tearing the children from their home, friends, family and school.” Similarly, the child’s preference, standing alone, does not constitute an emergency warranting jurisdiction pursuant to Domestic Relations Law § 75-d (Matter of Severio P. v Donald Y., 128 Misc 2d 539 [Fam Ct, Richmond County 1985]).
Use of emergency jurisdiction to forum shop has also not been tolerated by the courts. In Conticello v Conticello (91 AD2d 1008 [2d Dept 1983]), the Second Department affirmed the dismissal of a custody proceeding in a case of apparent forum shopping. While the father had the children in New York for a visit, he petitioned the Supreme Court for custody claiming emergency jurisdiction, even though only months before he had been denied a request for temporary custody by the Florida court that had made the original custody award and had scheduled a final custody hearing for two months later.
Notably, the official commentaries to the emergency jurisdiction section include a "blunt caveat” stating " '[t]his extraordinary jurisdiction is reserved for extraordinary cir *736 cumstances * * * when there is a child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph’ ” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, at 307, quoting Comments to section 3 of the UCCJA, Commissioners on Uniform State Law, 1981). The court finds that there is no "emergency” under either the UCCJA or PKPA in this matter.

C. The PKPA

While New York excludes child neglect and other agency-related cases from its definition of a "[c]ustody proceeding” (Domestic Relations Law § 75-c [3]),[7] the question remains whether the instant neglect proceeding constitutes a custody proceeding within the meaning of the PKPA, a question which has divided the courts that have addressed it (see, Care & Protection of Vivian, 420 Mass 879, 881-884, 652 NE2d 616, 618-619 [1995] [cases cited therein at holding that the PKPA preempts State jurisdiction in dependency cases]). The court concludes that under the facts and circumstances presented here, where: (1) another State exercising exclusive custody jurisdiction has made a custody determination some six days before this neglect case was filed; (2) two New York courts have held that neither Father nor the children can litigate custody in New York; (3) there is no emergency; (4) Father and the children were represented by counsel in the Florida custody modification proceedings; and (5) Petitioner’s protective concerns are based on claims which were raised, could have been raised and/or certainly should have been raised in the Florida proceedings and the two dismissed New York proceedings commenced by Father and the children, the PKPA precludes this court from modifying the Florida custody order in this article 10 child protective proceeding (see, Delk v Gonzalez, 421 Mass 525, 658 NE2d 681 [1995]; Matter of R.L.S. v Stonecipher, 879 P2d 1258 [Ct App Okla 1994], supra; Kasper v Kasper, 792 P2d 118 [Utah 1990]).
*737 Petitioner, the children’s attorney, and amicus cite Matter of Orange County Dept. of Social Servs. (Rebecca T.) v Roy T. (175 AD2d 130 [2d Dept 1991]) to urge this court to exercise subject matter jurisdiction herein, but the decision in Matter of Orange County Dept, of Social Servs. does not consider the PKPA and, moreover, in that case the Second Department found that the Family Court could have exercised jurisdiction under the "emergency” provision of the UCCJA (Domestic Relations Law § 75-d [1] [c]).
CONCLUSION
In the within matter the court does not dispute that the children are experiencing significant emotional distress. However, this situation is of long duration, the matter has been considered by a Florida court and there is no reason to believe that the Florida court is not competent to address any child protective concerns.[8] That court, in fact, has addressed child protective concerns, most recently, for example, by requiring that the children be met by a Florida counselor at the airport in Pensacola when they arrive for their April visit, have counseling each day of their five days there, and again when they return in June.
This court, moreover, is not unmindful that the children’s emotional distress may have been exacerbated by Father, who now through Petitioner, for a second time in this court, seeks to redress an admittedly unfortunate situation which he may have helped to create. The continued revictimization of these children must stop; the healing process must be permitted to begin. Outside of the glare of the public spotlight, this tragic family must be allowed to get on with their lives in some measure of peace.
This court, furthermore, is well aware that its decision will not be "popular”, as there is considerable public sentiment, *738 including the expressions of a number of prominent elected officials, urging the upholding of Petitioner’s position. This court, however, cannot and will not be influenced by considerations outside the rule of law. To do otherwise would be to undermine the very integrity of our judicial system.
For the reasons set forth in this decision, the court concludes it is without jurisdiction to decide this case. Accordingly, the petition is dismissed.

. Quoting from petitioner’s attorney’s oral argument. Similar arguments were made and rejected in Matter of R. L. S. v Stonecipher (879 P2d 1258 [Ct App Okla 1994]).

. The children counseled in Florida with psychologist John L. Hodges until custody was transferred to Father.

. The decision of the Honorable Michael Jones, Circuit Judge, Escambia County, Florida, dated March 27, 1997 stated that visitation for the summer of 1994 was postponed upon agreement of Mother and Father, although the neglect petition refers to incidents which allegedly occurred in Florida during the summer of 1994.

. Mother testified in the Florida proceeding that the visit was enjoyable for her and the children.

. Mother was informed of this application by notice to her local New York attorneys, who appeared in court on her behalf on April 3, 1997, opposing the relief requested and challenging this court’s jurisdiction, personal and subject matter (see, Family Ct Act §§ 1023,1029).

. Not only does this allegation not constitute neglect, it appears to conflict with the Petitioner’s statutory obligation to comply with court orders enforcing the visitation rights of certain noncustodial parents in analogous circumstances (see, Social Services Law § 398 [6] [o] [Commissioner shall ensure compliance "with a court order enforcing visitation rights of a noncustodial parent * * * pursuant to (Family Ct Act, art 10, part 8)”]).

. Professor Sobie notes that New York is one of only a few States to exclude child protective proceedings in its definition of "custody proceeding”. Florida does not. (Fla Stat Annot § 61.1306.) According to him, there "exists no valid reason to continue the child protective exclusion” and "New York should join the mainstream, via legislation or case law development” to abolish this exclusion. (1989, 1990 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-c, 1997 Pocket Part, at 85, 84; see also, Gainey v Olivo, 258 Ga 640, 373 SE2d 4 [1988] [a case involving a Monroe County Family Court custody and paternity case and a Georgia adoption case; held: the UCCJA applies to adoption cases notwithstanding a State’s definition to the contrary].)

. Petitioner’s counsel misstates his client’s legal "mandate”. While the agency is mandated to investigate reports of child abuse and neglect (Social Services Law § 397 [2]; § 398 [2] [a]; [6] [a]; §§ 422, 424 [6]; 18 NYCRR 432.2 [b] [1], [3]; cf., Matter of Kimberly S. M. v Bradford Cent. School, 226 AD2d 85 [4th Dept 1996]), it is not mandated to commence an article 10 proceeding even if a report is "indicated” (Social Services Law § 397 [2] [b]; § 398 [2] [a]; § 424 [10]-[13]; 18 NYCRR 432.2 [b] [3] [vi]; [4] [iv]; [c] [1] [i]; Matter of Kimberly S. M. v Bradord Cent. School, supra; Matter of Maroney v Perales, 102 AD2d 487).
Moreover, the agency’s obligation is to protect children, not to advance the custodial claims of one parent, particularly a parent who is engaged in pending, acrimonious custody litigation (see, Family Ct Act §§ 656 [penultimate paragraph], 1011; Matter of R. L. S. v Stonecipher, supra).