OPINION OF THE COURT
Daniel Turbow, J.
Petitioner Deborah Dean[1] is the mother, and respondent George Crane is the father of Robin Crane, who was born on March 16, 1989. Petitioner has moved to vacate a final order of Family Court, Queens County, which granted respondent custody of Robin and to have physical custody returned to her as was previously required by an order of the District Court of Colorado. Alternatively, she seeks to have the matter “referred” to the Colorado court for consideration. For the reasons set forth below, the motion is granted to the extent of directing that a plenary fact-finding hearing be had in this court to determine which parent is entitled to a final order of custody under the “best interests” tests prescribed by the Court of Appeals. (See, e.g., Eschbach v Eschbach, 56 NY2d 167 [1982]; Friederwitzer v Friederwitzer, 55 NY2d 89 [1982].) In all other respects the motion is denied.
FACTS
The mother and father were married on September 4, 1987 and divorced pursuant to a decree of District Court, El Paso County, Colorado, entered on or about July 24, 1996. That decree incorporated the terms of a separation agreement which provided that the parties were to share joint legal custody of Robin, but that her primary residence was to be with the mother. The agreement also provided that the Colorado court was to retain continuing personal jurisdiction over the parties and subject matter jurisdiction over disputes relating to the enforcement of the agreement.
On or about March 18, 1998, the mother suffered a near fatal car accident in Colorado. On or about March 22, 1998, Robin left her Colorado home for a previously scheduled visit with her father, who was then residing in Queens County, in New York City. The visit was to conclude on March 28, 1998.
On March 27, however, the father filed a petition in Family Court, Queens County, seeking custody of Robin. The mother *257 acknowledges that she was served with the petition, but alleges that, because of her car accident, she was “too weak to travel to New York to contest” it.
In the petition, the father alleged that the court should exercise “emergency jurisdiction” pursuant to Domestic Relations Law § 75-d (1) (c) so as to protect the child. Specifically, the father alleged, among other things, that the child had moved with the mother approximately five times in the last several years, and that she had been exposed to repeated serious incidents of domestic violence: “Each time [the mother moved], she has taken up with a different boyfriend, and each boyfriend has been physically abusive to the respondent mother. Upon information and belief, one boyfriend * * * broke the respondent mother’s shoulder; another boyfriend * * * broke her mother’s nose. Although the subject child has not directly witnessed these severe occasions of physical abuse, she was aware of it happening in that she heard the sounds, screaming and yelling as it occurred. On at least one occasion, the subject child did hear on [sic] the boyfriends smash the petitioner’s car window out of anger, and later saw the actual broken glass.”
The petition also recites that the father had the child seen by a certified social worker, Ms. Jane Roberman. Ms. Roberman subsequently prepared a facially thorough report that was made available to the Queens County Family Court. That report supported the allegations in the petition concerning the transient nature of the child’s existence with her mother and her exposure to domestic violence. In summary, it noted that “Robin presents as a lonely and frightened child,” and that “she would like to stay with her father and not return to her mother.” It further stated that her concerns were sufficiently substantial that Ms. Roberman called the “Child Abuse and Neglect Reports Registry to report that Robin may be at risk of physical and/or emotional harm if returned to her mother’s care.”
The Agency for Children’s Services (ACS) also prepared a report that was made available to the court. The report stated that the father and his new wife were taking good care of the child in their home. In addition, the report recited that its author had spoken to the mother in Colorado by phone on March 31, 1998 and June 22, 1998. Although the mother assertedly “denied partly” the incidents of domestic violence she apparently did not intend to contest the petition: “Mother said she has returned to her job but that she is not in a good condi *258 tion of health to appear in Court on the case at this time and that she does not know how soon she might be able to come. The mother said she would relinquish her legal custody of the child to the father this time due to in-ability [sic] to appear in court. She said she would later consider asking the Court to return child’s custody to her when she become [s] very healthy.”
On June 24, 1998, Judge Richard M. Berman of the Queens County Family Court granted the father a final order of custody (the Queens Order or Order). Petitioner learned of that Order no later than July 22, 1998, when the Law Guardian who had been assigned to the case wrote her, stating, “[T]he judge indicated that he was issuing the order without prejudice for you to seek custody when you are healthy.” Robin has been living with her father pursuant to the Order since its issuance.
The mother took no steps to regain custody until April 28, 1999 when she filed the instant petition in this court, the father apparently having moved to Brooklyn since the conclusion of the Queens proceeding. In this petition, the mother expressly sought “modification” of the Queens Order by reason of “changed circumstances,” including the father’s alleged interference with the mother’s access to the child and the fact that the mother had assertedly recovered from her car accident so that she “now has full capacity to once again resume the physical care for her child.” As relief, the mother sought “reinstate [ment] ” of the “original custody determination of the” Colorado court. Nowhere in the petition did the mother suggest that the New York Family Court lacked jurisdiction to adjudicate the substantive custody issue.
Following the father’s appearance, a Law Guardian was appointed, and a temporary order of visitation was granted the mother.
On or about June 21, 1999, the mother filed a motion in Colorado District Court “for the return of the Minor Child and to Reaffirm Colorado Jurisdiction.” In those papers, she alleged that the Queens County Family Court had been without jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) to enter its order granting the father custody since it impermissibly modified a preexisting custody decree over which the Colorado court retained jurisdiction. She requested that the Colorado Judge to whom the matter was assigned confer with the undersigned and that the Colorado court “affirm jurisdiction” over the dispute and direct the return of the child to her.
Thereafter, on August 12, 1999 the mother filed the instant motion described at the outset. The motion is based upon an *259 amplification of the allegations she raised in Colorado, in that she asserts that under the UCCJA and Parental Kidnaping Prevention Act ([PKPA] 28 USC § 1738A), the Queens County Family Court lacked subject matter jurisdiction to grant the father custody. Specifically, among other things, she alleges— and the Law Guardian agrees — that the Queens County Family Court could not exercise jurisdiction unless the Colorado court declined to exercise jurisdiction over the parties’ dispute and that Judge Berman improperly failed to contact the Colorado court to determine whether such a declination would be made. Furthermore, she asserted that there was no independent basis for the exercise of jurisdiction in New York since it was not the home State of the child at the time of the filing of the father’s petition and because the father’s allegations and factual submissions did not warrant, as a matter of law, the exercise of “emergency jurisdiction.” In addition, contradicting the information set forth in the ACS report prepared in conjunction with the Queens proceedings, the mother denied that she had ever told ACS that she consented to the grant of custody to the father.
The father, in opposition, alleges that the mother failed to challenge the exercise of jurisdiction by the Queens County Family Court, notwithstanding notice of those proceedings, and cannot be heard to complain by motion filed 10 months after the issuance of the Queens Order. Moreover, he notes that on September 7, 1999, during the time that the instant motion was being briefed, the parties appeared before the Honorable Timothy J. Simmons, the Colorado District Court Judge responsible for the proceedings commenced by the mother there. Via his Colorado counsel, the father reported that Judge Simmons opined that he:
“would not take jurisdiction away from New York [because] the New York Orders have been entered for well over one year. The original petition filed by [the mother] in New York * * * did not challenge the jurisdiction of the New York Courts and in fact conceded that the New York Family Court had jurisdiction to determine the modification.
“Judge Simmons stated that the jurisdictional issue was in the New York court system for the New York court system to decide.”
On December 29, 1999 the undersigned spoke to Judge Simmons by telephone. Judge Simmons stated that the foregoing report of his views was accurate. It should be noted however that he further emphasized that should this court decline to *260 exercise jurisdiction, he would be prepared to assume jurisdiction and hear the case, so that the parties would not be left without a source of substantive relief.
DISCUSSION
Contrary to the mother’s position, it is clear that the Queens County Family Court had subject matter jurisdiction to issue its Order. Domestic Relations Law § 75-d (1) (c) (ii) grants the Family Court subject matter jurisdiction to deal with custody matters where “the child is physically present in this state and * * * it is necessary in an emergency to protect the child.” It is plain that the evidence made available to the Queens County Family Court on its face justified the exercise of jurisdiction under that section.
That evidence, including the reports of social worker Roberman and ACS, supported the father’s allegation that the child had been repeatedly exposed to acts of serious domestic violence visited upon the mother. There is little question that, if true, such exposure places the child’s physical and emotional well-being at substantial and immediate risk. Indeed, it can provide the predicate for a finding of neglect. (See, e.g., Matter of Athena M., 253 AD2d 669 [1st Dept 1998] [“evidence of acts of severe violence between respondents in the presence of their children is sufficient to show, ‘as a matter of common sense’, that the children were in imminent danger of becoming impaired within the meaning of Family Court Act § 1012 (f) (i) (B)”].) Moreover, the evidence presented and the petition’s allegations were uncontested by the mother at the time of the court’s consideration of the petition. Clearly, under these circumstances, “emergency jurisdiction” existed under section 75-d and empowered the court to issue its Order. As the First Department has stated: “[0]nce an emergency is found to exist, the court has jurisdiction and is empowered to determine the issue of child custody. The emergency and the child’s safety outweigh all other considerations.” (Matter of Vanessa E., 190 AD2d 134, 137 [1st Dept 1993].)
A different conclusion is not mandated by the fact that the parties were apparently subject to the jurisdiction of the Colorado court at the time the Queens County Family Court considered the matter. It is true that, by its terms, the PKPA provides that a court of one State may modify the preexisting custody determination of another State only if, inter alia, “the court of the other State no longer has jurisdiction, or * * * has declined to exercise such jurisdiction to modify such *261 determination.” (28 USC § 1738A [f¡ [2].) It is further true that had the issue of the prior Colorado decree been raised to the Queens County Family Court, the PKPA would have thus been implicated, the procedures it contemplates may have been triggered, and a different result may have obtained. However, the fact is that the mother did not raise the issue before the Queens County Family Court. Under these circumstances, the failure to consider its implications did not deprive the Queens County Family Court of jurisdiction in the sense of depriving it of authority to consider the matter.
The teaching of Chief Judge Breitel in Lacks v Lacks (41 NY2d 71 [1976]) is particularly instructive. There, in the context of considering when a motion to vacate for lack of “subject matter jurisdiction” under CPLR 5015 (a) (4) may lie, he noted that “jurisdiction is a word of elastic, diverse, and disparate meanings.” (Supra, at 74.) As a result, it is “grossly oversimple” to state and apply blindly the “blackletter law that a judgment rendered without subject matter is void, and that the defect may be raised at any time and may not be waived” (supra, at 75). Rather, the authorization found in CPLR 5015 to vacate for lack of subject matter jurisdiction may only be invoked “to preserve objections so fundamental to the power of adjudication of a court that they survive even a final judgment or order.” (Supra, at 74-75 [emphasis added].) Put another way, there is a “clear distinction between a court’s competence to entertain an action and its power to render a judgment on the merits * * * Absence of competence to entertain an action deprives the court of ‘subject matter jurisdiction’; absence of power to reach the merits does not.” (Supra, at 75.) Accordingly, even a serious error of law in determining whether a substantive cause of action exists does not serve to deprive a court of subject matter jurisdiction to adjudicate a case. (Supra, at 77.) Indeed, that is so even where the substantive requirement is worded as a “jurisdictional prerequisite” to the grant of relief. (See, Adams v Adams, 255 AD2d 535 [2d Dept 1998].)
Under these principles, it is clear that a court which otherwise has “subject matter jurisdiction” over a custody dispute in the sense used by Chief Judge Breitel may not be deprived of that jurisdiction by the PKPA. In other words, its “competence to entertain” a custody petition is not diminished by operation of the PKPA. Indeed, by its relevant terms the PKPA does not purport to implicate that “competence.” Rather, consistently with the manner in which the statute is designed to operate, the statute’s language affects only the court’s “power *262 to reach the merits” of an interstate custody dispute. Thus, it acknowledges that a court considering modification of a sister State’s decree might have the competence to act on the issue, but should only exercise its authority — and reach the merits — if certain conditions are met:
“A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
“(1) it has jurisdiction to make such a child custody determination; and
“(2) the court of the other State [lacks or declines the exercise of jurisdiction]” (28 USC § 1738A [f]).
As applied to the facts of the instant case these principles preclude a conclusion that the Queens County Family Court lacked subject matter jurisdiction to issue its Order. As noted above, it had the “competence to entertain” the father’s petition by reason of the facts giving rise to “emergency jurisdiction.” The fact that the PKPA could — or should — have been invoked does not undermine that competence. Put another way, the failure to apply the PKPA may have been an error of law, but it is not an “objection so fundamental to the power of adjudication of the court,” that it should survive the final order.
Such a conclusion is particularly appropriate here given the mother’s actions. Most fundamentally, she simply did not challenge the exercise of jurisdiction until more than a year after the Queens Order issued. Indeed, when she first commenced this proceeding, she invoked the jurisdiction of this court and sought modification of the Queens Order, rather than its vacatur. Having long acquiesced to the exercise of authority by this State, she should not now be heard to complain.
In this regard, the mother cites Gomez v Gomez (86 AD2d 594 [2d Dept], affd 56 NY2d 746 [1982]) as providing precedential absolution for her prior failure to challenge jurisdiction. Gomez, however, is wholly inapposite. There, without challenging jurisdiction, a mother affirmatively participated in a proceeding brought by a father in New York Supreme Court to modify a Florida decree and which resulted in the entry of temporary orders of custody in favor of the father. Approximately seven months after the issuance of those orders the mother moved to have them vacated, alleging that subject matter jurisdiction over the proceeding had been lacking when it was commenced. The Appellate Division agreed that no subject matter existed when the case had been started, and *263 that the mother had not waived that infirmity by participating in the proceeding without protest. (Supra, at 595 [“Although the mother did not contest in personam jurisdiction and waived her objection by interposing a cross application * * * subject matter is not waiveable”].)
Here, by contrast, as discussed fully above, subject matter jurisdiction — in the form of “emergency jurisdiction” — did exist at the time the father brought his proceeding. The mother’s true substantive objection is the failure of the Queens County Family Court to apply the PKPA — and that objection should and could have been raised at the outset of the Queens proceedings. Her failure to do so operates as a waiver of that nonjurisdictional objection. (Cf., CPLR 3211 [e].)
The court thus finds that the Queens County Family Court had jurisdiction over the dispute sufficient to issue its Order and denies the motion to vacate the Queens Order on jurisdictional grounds.[2] However, that Order was entered on default, with the mother never having had the opportunity to challenge the merits of the father’s claim to custody. By the same token, the initial Colorado order was entered without the benefit of a fact-finding. Given all these circumstances, as well as the mother’s alleged recovery from her automobile accident and the other matters relating to the parties’ relative fitness as set out in their affidavits, it is apparent that a plenary best interests hearing to determine custody is required. (See, e.g., Eschbach v Eschbach, 56 NY2d 167 [1982], supra; Dente v Dente, 225 AD2d 544 [1996]; see also, Adams v Adams, 255 AD2d 535, 536, supra [a more liberal standard is applied in addressing motions to vacate defaults in custody and support disputes, “ ‘favoring dispositions on the merits’ ”].)
*264 The court further concludes that such a hearing should take place in New York, rather than in Colorado. (See, Domestic Relations Law § 75-h.) Although the issue is a close one, the court finds that, given the fact that the child has been in New York with the father for nearly two years now, and is attending school here, it cannot be said that “ ‘substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in’ ” Colorado. (See, Matter of Vanessa E., 190 AD2d 134, 138, supra.) Moreover, for the reasons stated, the most recent valid order governing custody is the one issued by the New York court. And, while Judge Simmons of the Colorado District Court has not declined jurisdiction over the matter per se, he did suggest that, given the circumstances outlined above, it would likely be preferable for the matter to be resolved in this forum.
CONCLUSION
The motion to vacate is granted to the extent stated and otherwise denied.

. The parties’ names have been changed for purposes of publication.

. The Law Guardian has asserted that this court should not consider the motion to vacate the Queens Order because CPLR 5015 (a) ostensibly requires that it have been made in the issuing court. (See, Hrouda v Winne, 77 AD2d 62 [3d Dept 1980]; Matter of Hrouda v Winne, 112 AD2d 304 [2d Dept 1985].) The court declines to accept this argument, which raises form over substance and common sense, for a variety of reasons. First, given respondent father’s current Brooklyn residence, petitioner’s underlying modification petition is appropriately before this court. Because the petition to modify and the motion to vacate the Queens Order rest on closely related arguments, to accept the Law Guardian’s contention would require that petitioner litigate similar claims simultaneously in two different courts. Second, the Queens County Family Court is in no better position to decide the motion to vacate than this court since the Judge who issued the original Queens Order is no longer sitting on that Bench. Finally, the only party who might have a substantive complaint about having the vacatur motion in the wrong forum — the father — has not raised any such objection.